Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the Form 21 Agreement for Compensation, which was approved by the Commission on April 14, 1994, in the Form 26 Supplemental Agreement for Compensation, which was approved by the Commission on August 11, 1994, and in the Pre-Trial Agreement, which was filed by the parties on July 28, 1995, which are all incorporated herein by reference, and at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured with Risk Control Services as the servicing agent.
3. The employment relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury to her back on February 21, 1994, following which the parties entered into a Form 21 Agreement for Compensation.
5. The plaintiff received temporary total disability compensation at the rate of $306.68 per week from February 22, 1994 through May 2, 1994.
6. The plaintiff received temporary partial disability compensation from May 3, 1994 through May 15, 1994, pursuant to the Form 26 Supplemental Agreement for Compensation.
7. By letter dated September 15, 1994, Commission Executive Secretary Nick Davis found that the defendant had improperly terminated the plaintiff's benefits, ordered the defendant to reinstate plaintiff's benefits and authorized the plaintiff to obtain treatment from a back/neck specialist.
8. On January 24, 1995, Chief Claims Examiner Pat Benton authorized the plaintiff to change his treating physician to Dr. Alfred Rhyne.
9. The issues for determination are:
 a. Whether defendants have complied with Orders of the Commission;
 b. Whether plaintiff is entitled to additional compensation from May 3, 1994 to the present;
 c. Whether plaintiff's medical treatment by Dr. Rhyne is causally related to the admittedly compensable injury;
 d. Whether the medical treatment subsequent to May 4, 1994 was reasonably required to effect a cure, provide relief, or lessen the period of disability; and
 e. Whether Dr. Rhyne has authorized duplicative diagnostic procedures absent a showing of change of condition.
10. The parties agreed to stipulate the following documents into the record:
a. Plaintiff's Employment and Tax Records;
 b. Medical Records of Dr. William L. Sims, Dr. David M. Jones, Dr. Edward R. Gerrard, Dr. David L. Kelly, Dr. John dePerczel, Dr. Andrea Stutesman, Dr. Alfred Rhyne, Dr. Timothy Garner, Frye Regional Medical Center, and Catawba Memorial Hospital; and
 c. Records of Southern Rehabilitation Network, Inc.
* * * * * * * * * * * *
Based upon all the competent evidence adduced from the record, the Full Commission adopts the findings of fact of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a forty-five year old male with a sixth grade education who had been employed as an upholsterer/trimmer for approximately three months prior to the admittedly compensable injury on February 21, 1994 when he injured his neck and elbow in a fall.
2. The plaintiff had a prior medical history of a C1-3 cervical fusion, which occurred in the early 1970's, following which the plaintiff returned to gainful employment.
3. The upholsterer/trimmer job required the plaintiff to lift sofas and chairs, weighing fifty to seventy-five pounds, stretching and pulling fabric to cover the pieces, and placing welt, skirts, bottoms, and wings on the pieces. The job required the plaintiff to engage in constant bending, stooping, twisting, standing, and use of the arms.
4. From approximately 1985, the plaintiff worked as a self-employed carpet and vinyl installer on weekends and after work hours. Following the admittedly compensable injury, the plaintiff was forced to give up that job as he could no longer perform the physical aspects of the job after the neck injury of February 2, 1994.
5. Following the admittedly compensable injury, the plaintiff was diagnosed with a cervical strain, for which he was prescribed a cervical collar and medications. The plaintiff was subsequently seen by neurosurgeon Dr. William L. Sims, who found C4-5 and C5-6 ventral extradural defects which he found to be a new injury and unrelated to the prior C1-3 fusion.
6. On March 1, 1994, the plaintiff was examined by Dr. David Jones, a neurosurgeon, upon referral by his family doctor. During this treatment, the plaintiff received epidural injections; and following the second injection, the plaintiff began to experience incontinence for which he was referred to urologist Dr. Edward Gerrard.
7. Dr. Jones released the plaintiff to return to light duty work making ottomans, which was made available to him on May 3, 1994. The ottoman job was lighter in terms of weight to be lifted; however, the job required pulling and stretching the fabric, which the plaintiff found difficult to perform as a result of the neck injury. The plaintiff reported this to Wayne Duncan, the plant manager, who advised that if the plaintiff could not perform the ottoman job, the defendant could not use him.
8. The defendant unilaterally terminated plaintiff's benefits on May 15, 1994.
9. On June 30, 1994, defendant advised the plaintiff that if he was unable to work full time, he was no longer needed. The plaintiff was advised that the ottoman job was a job made-up for him. The plaintiff requested to be allowed to go into a staging job which was light work, but the defendant refused to allow the plaintiff to go into the job.
10. After plaintiff's termination, he sought jobs at other furniture manufacturers; however, the plaintiff became discouraged in his job search due to his inability to work all day due to neck pain.
11. Defendant failed to comply with the Order of Executive Secretary Nick Davis on September 15, 1994, to reinstate plaintiff's benefits.
12. On October 13, 1994, the plaintiff went to Dr. Jon dePerczel, an orthopaedic surgeon, who advised that the plaintiff should see Dr. Alfred Rhyne who specialized in treatment of the cervical spine.
13. The plaintiff was seen by Dr. Rhyne, a cervical spine specialist, on November 6, 1994, following which a repeat myelogram and CT scan were ordered. Testing disclosed a C5-6 foraminal narrowing, which Dr. Rhyne related to the trauma from the work-related injury.
14. The plaintiff was seen by Dr. Andrea Stutesman on January 4, 1995, at which time Dr. Stutesman found the C6 injury in need of treatment.
15. On or about August 15, 1995, Pat Cummins of Resource Opportunities, Inc., who was retained by defendant to manage plaintiff's case, referred medical records and testing to Dr. Timothy Garner, a neurosurgeon, to conduct a review of records. Dr. Garner did not examine the plaintiff and deferred his opinion to that of treating physicians. Dr. Garner did opine that plaintiff may potentially benefit from surgery.
16. On October 6, 1995, Dr. Rhyne performed surgery on plaintiff at the C6 level. The surgery was sponsored by N.C. Division of Vocational Rehabilitation. Plaintiff's symptoms improved after the surgery.
17. The plaintiff has not yet reached maximum medical improvement nor has he been rated as having a permanent partial impairment to his cervical spine.
18. The plaintiff has been disabled from earning wages from July 1, 1994 as a result of his admittedly compensable neck injury.
19. This litigation was necessitated by defendant's unilateral termination of benefits and the failure of the defendant to comply with the Order by the Commission to reinstate benefits.
* * * * * * * * * * * * *
The foregoing findings of fact and conclusions of law engender the following additional
CONCLUSIONS OF LAW
1. As a result of the admittedly compensable injury, the plaintiff is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between $460.00 and the actual wage for the period from May 16, 1994 through June 30, 1994. N.C. Gen. Stat. § 97-30.
2. As a result of the admittedly compensable injury, the plaintiff is entitled to temporary total disability compensation at the rate of $306.68 per week from July 1, 1994 to the present, and continuing until such time as the plaintiff returns to work or until further orders of the Commission. N.C. Gen. Stat. § 97-29.
3. The plaintiff is entitled to have defendant pay for medical expenses incurred, or to be incurred, as a result of the admittedly compensable injury. Such expenses shall include treatment rendered by Dr. Gerrard and Dr. Rhyne.
4. As a result of defendant's failure to comply with the Orders of the Commission, compensation due plaintiff shall be increased by ten per centum (10%), pursuant to N.C. Gen. Stat. § 97-18 (g).
5. As a result of defendant's failure to comply with the law and Orders of the Commission, defendant shall bear the entire cost of these proceedings, including plaintiff's attorney's fees. N.C. Gen. Stat. § 97-88.1.
* * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay temporary partial disability compensation at the rate of two-thirds of the difference between $460.00 and the actual weekly wage, plus the ten per centum penalty for the period from May 15, 1994 through June 30, 1994.
2. Defendant shall pay temporary total disability compensation at the rate of $306.68 per week, plus the ten per centum penalty from July 1, 1994 to the present, and continuing until such time as the plaintiff returns to work or until further orders of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
3. Defendant shall pay directly to plaintiff's counsel, an amount equal to twenty-five percent of the compensation awarded in paragraphs one and two herein. Thereafter, defendant shall pay directly an amount equal to every fourth check to plaintiff's counsel. This assessment of costs is as a result of defendant's failure to comply with the Order of Executive Secretary Davis and with the law and rules of the Commission.
4. Defendant shall pay medical expenses incurred, or to be incurred, as a result of the compensable injury.
5. Defendant shall pay the costs due this Commission, including expert witness fees in the amount of $400.00 to Dr. Timothy B. Garner; $291.66 to Dr. David M. Jones; $600.00 to Dr. Alfred L. Rhyne; and $208.32 to Dr. Andrea Stutesman.
 S/ __________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________________ THOMAS J. BOLCH COMMISSIONER
S/ __________________________ LAURA K. MAVRETIC COMMISSIONER
BSB:md